NUMBER 13-99-244-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


REYES ANIVAL HERNANDEZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.

____________________________________________________________________


On appeal from the 178th District Court of Harris County,

Texas.

____________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Chavez, and Rodriguez


Opinion by Justice Hinojosa



 A jury found appellant, Reyes Anival Hernandez, guilty of the
offense of murder(1) and assessed his punishment at twenty-five years
imprisonment and a $10,000 fine. By four points of error, appellant
contends the trial court erred in: (1) overruling his objection to the
court's improper attempt to commit prospective jurors to a specific set
of facts, (2) overruling his objection to the State's improper attempt to
commit prospective jurors to a specific set of facts, (3) denying his
challenge for cause to veniremember number seven, and (4) denying his
motion for mistrial based upon the prosecutor's improper jury
argument. We affirm.

A. Background


 In October 1997, appellant met Deborah Baxter at a club in
Pasadena, Texas, where Baxter worked as a topless dancer. Appellant
and Baxter began to date and appellant bought Baxter various material
goods, e.g., a car, clothes, and a cellular telephone. Baxter broke off the
relationship when appellant began following her, harassing her, and
watching her apartment at all hours of the night. Appellant then
requested that Baxter return the items he had given her. 

 On December 6, 1997, appellant went to the "She's Not Here," a
bar Baxter frequented. Baxter was not there, but appellant proceeded
to get in an argument with Baxter's friend, Michael Dean Ramirez. The
bartender asked appellant to leave, and he did. Baxter arrived at the bar
later that evening with the bar's owner, Leticia Rocha. Baxter, Rocha,
and Ramirez remained at the bar after it closed. At approximately 3:00
a.m., appellant returned to the bar with a gun, demanding that Baxter
return his car and cellular phone. Ramirez had the keys to the car, and
as he reached into his pocket to retrieve them, appellant shot him. The
bullet entered at Ramirez's neck and exited through his back, lacerating
his left lung. The wound caused Ramirez to bleed to death. Appellant
also shot at Rocha, but missed her. Rocha then called 911. Appellant
unloaded the bullets from his gun, and surrendered to the police when
they arrived.

B. Voir Dire


1. Trial Court's Hypothetical


 In his first point of error, appellant contends the trial court erred in
overruling his objection to the court's voir dire hypothetical because it
was an improper attempt to commit prospective jurors to a specific set
of facts. Specifically, appellant asserts the court attempted to qualify
the venire panel with an improper hypothetical situation regarding a
person's eligibility for probation if the person was convicted of murder.

 During voir dire the trial court discussed the range of punishment
for the offense of murder. The record reflects the following occurred:

 The Court: Additionally since 1974 our law has
provided that where it is shown that
an individual has no prior felony
convictions a jury may recommend
probation. Probation means that the
defendant is not sent to prison, he is
placed on rules and conditions of
probation.

 

 * * * * * 

 

 So the minimum punishment in Texas for
an individual found guilty of murder who
has no prior felony convictions is five years
probation, up to ten years probation, or five
years in prison, up to the maximum
punishment of ninety-nine years in prison or
life in prison and a ten thousand dollar fine.

 

 We have this wide range of
punishment in Texas for all first degree
felonies because the legislature since 1974
has clearly recognized that every individual
who's found guilty of the offense of murder
is different. The facts of their cases are
different and their backgrounds are
different.

 

 * * * * *

 What I want to know now is this. Is
there anybody on this jury panel who feels
as though you would not be able to
consider the entire range of punishment for
an individual found guilty of the offense of
murder who has no prior felony convictions
from the minimum of five years probation all
the way up to the maximum of ninety-nine
years in prison or life in prison and a ten
thousand dollar fine? I'm going to break my
question down to two parts. The first part
is this. Is there anybody who feels as
though you would never ever under any
circumstances no matter what the facts of
the case are, no matter what the
background of the defendant is, you would
never ever consider under any
circumstances assessing the minimum
punishment of five years probation for the
person found guilty of the offense of
murder?

 

 * * * * *

 Anybody else have any questions? Yes,
ma'am.

 

 Venireperson: Could you define murder, first degree?

 

 The Court: Intentionally and knowingly cause the
death of an individual, all right? 
There's a second way in Texas that a
person commits murder if you intend
to cause serious bodily injury to an
individual and you commit an act
clearly dangerous to human life that
caused the death of an individual. 
Wait. That's also murder in Texas, all
right? And, and that's why this
indictment has got two paragraphs. It
alleges both of the ways that, that,
that murder may be committed in
Texas.

 

 Venireperson: Then I like to add my name or my number
to the list of the minimum.

 

 The Court: All right. Yes, ma'am.

 

 Venireperson: I like to add my number to the minimum.

 

 The Court: Before you add your number to it hear
me out. These lawyers and I realize
that the minute I say murder and start
talking about the range of punishment,
start talking about probation, that
people tend to think of the worse case
scenario of where a person commits
murder.

 

 I was channel surfing during the Super
Bowl. I saw a show where Richard Speck
killed seven nurses in Chicago thirty years
ago. Watched ten minutes of that, this
horrible crime, and that's what people tend
to think about when I say the word murder. 
There are many, many other instances,
though, where a person can also be guilty
of murder, and the, the, the case that I like
to, to talk about is the real life case about
ten years ago or so in Louisiana where a
young girl was kidnapped, raped and
murdered. They caught the guy who did it
out in Nevada, uhm, several days later. He
gave a full confession. Some police officers
from Louisiana flew out to Nevada to get
this guy, they flew him back to, to the New
Orleans Airport, and when they walked this
guy off of the plane all handcuffed, the
father of that girl walked up to him and shot
him five times and killed him. Now that's
murder in Louisiana and it's murder in
Texas. He intentionally and knowingly
caused the death of an individual. But I
would submit to you that when you
consider the totality of the facts of that case
and the background of that individual,
assuming he had no prior criminal record,
I'm assuming had a good job, well
respected, that might be a situation where
you not only consider five years probation,
but grant or recommend five years
probation.


 * * * * *


 What do you think about that?


 Venireperson: I still have a hard time with murder,
knowing, intent.

 

 The Court: Right. He intentionally, knowingly
caused the death of that individual,
but when you consider the totality of
the circumstances his seven year old
daughter kidnapped, raped, daughter
[sic] by this guy. 


 Venireperson: He was already convicted?


 The Court: Nope, hadn't been convicted but he
confessed, he laughed about it. He
took the law into his own hands, in
essence. Do you see my point? 


 * * * * *


 The Court: You heard my scenario. Once again,
no right or wrong answers to my
question, but my question was that
you would never ever, under any
circumstances, be able to even
consider assessing a minimum
punishment of five years probation. 
You all raised your hand said could
never ever. Now that you understand
there are many situations where a
person commits an offense of murder,
uhm, have any of you all changed your
minds about the answer to that
question, . . . .


 * * * * *

 

 Venireperson: For murder, really, is murder.


 The Court: Murder is murder. No doubt about it. 
The guy who killed and raped -- huh?


 Venireperson: If you give him five years probation he [sic]
be out on the street doing it again.


 The Court: He rides down the elevator with you.


 Venireperson: That's right. He would do it again.


 The Court: No? Come on. This guy whose
daughter got murdered by this rapist,
you think he'd go out murder
somebody again?

 

 Venireperson: Well, he might not.


 The Court: Right.


 Venireperson: But most of the other people do.


 The Court: I'm not talking most everybody. I'm
talking about just the one individual
out in Louisiana. You see my point?


 Venireperson: Yeah, I see your point.


 The Court: I mean, that guy in Louisiana he isn't
going to get a speeding ticket. He
isn't. He's going to ride the elevator. 
He is not going to get a speeding
ticket. You might want to buy him
dinner. 


 Defense Counsel: I just object. I must object to your
hypothetical cause you are committing
this jury to the concept of probation,
that is, as to one set of facts rather
than the general concept. I must
object to it. I object further because
your court -- this case is really
euthanasia, now you're -- I believe
that you're trying to argue with the
jurors about what their opinions are,
and I object.


 The Court: Okay. Overruled.


 Appellant asserts the trial court's Louisiana hypothetical attempted
to commit the venire panel to a specific set of extreme facts in an
attempt to qualify potential jurors. After a considerable amount of
questioning by the trial court, appellant objected to the trial court's
hypothetical and to its attempt to commit the jury panel to a particular
set of facts. Appellant's objection was not timely. The objection must
be made at the earliest possible opportunity or appellant fails to
preserve error for appellate review. See Tex. R. App. P. 33.1; Wheatfall
v. State, 882 S.W.2d 829, 833 (Tex. Crim. App. 1994). Appellant
allowed the trial court to discuss the hypothetical at great length before
he objected, thus, he did not preserve error for our review. 

 Assuming, arguendo, that appellant timely objected to the trial
court's hypothetical, we conclude the trial court did not err in its
presentation of the hypothetical. The court of criminal appeals has held
that the use of a hypothetical fact situation during voir dire is
permissible if it is used to explain the application of the law, but is
improper if used to inquire how a venireman would respond to
particular circumstances as presented in a hypothetical question. 
Cuevas v. State, 742 S.W.2d 331, 336 n. 6 (Tex. Crim. App. 1987). 
Hypothetical questions may not be used to commit the venire to a
particular set of facts. Atkins v. State, 951 S.W.2d 787, 789 (Tex. Crim.
App. 1997). Here, the context of the trial court's hypothetical illustrates
that the judge was attempting to inform the prospective jurors that they
had to be able to consider the entire range of punishment that could be
levied. See Fuller v. State, 829 S.W.2d 191, 200 (Tex. Crim. App. 1992)
(jurors must be willing to consider the full range of punishment
applicable to the offense to avoid a challenge for cause). The judge was
explaining to the jury panel that they needed to have an open mind and
would have to consider the possibility of sentencing an individual to
probation for committing the offense of murder. The trial court's
hypothetical showed how probation could be applied depending upon
the totality of the circumstances and facts of a given case, and that
every case is different. Given that the facts described in the trial court's
hypothetical are dissimilar to those actually involved in this case, and
the fact that the trial court was presenting the hypothetical to explain
to the prospective jurors that they must maintain an open mind and
weigh all the facts of a case when considering punishment, we
conclude the trial court did not abuse its discretion in overruling
appellant's objection. See Anders v. State, 973 S.W.2d 682, 686 (Tex.
App.--Tyler 1997, pet. ref'd) (noting that the dissimilarity between the
facts in the hypothetical and those of the actual trial is a factor to
consider); Henry v. State, 800 S.W.2d 612, 616 (Tex. App.--Houston
[14th Dist.] 1990, no pet.) (hypotheticals that bear no resemblance to
the crime committed are proper because they are simply designed to
explain the application of a principle of law).

 Appellant's first point of error is overruled.

2. The State's Hypothetical


 In his second point of error, appellant contends the trial court erred
in overruling his objection to the State's voir dire question about a
battered wife because it was an attempt to commit prospective jurors
to a specific set of facts.

 The prosecutor presented the following to the prospective jurors:

 Prosecutor: Now I want to talk -- I want to make
sure y'all understand what the judge
was talking about cause I know this is
stuff you never think about. You never
think, okay, what's the range of
punishment for murder in Texas. . .
.Now the judge told you the range of
punishment is huge, okay? It's five
years probation all the way to life. 
Why is it that way? Because we have
a million different kinds of murders in
Texas. A million different. I guarantee
when you heard the word murder
there were seventy-two different
mental pictures of what that meant. 
Seventy-two different pictures. 
Probably ones you're thinking of are
the high end, the life end of the scale,
okay? Like the judge told you that one
about the girl getting raped, father
killing. Another one you would not
believe in Texas is euthanasia. If you
pull the plug on someone. That's
murder in Texas, okay? That's what,
what we're not asking you to do
today, we're not asking you what
would you give on a murder, okay,
because y'all don't know the facts of
this case. You have no idea what
kinds of facts are involved, what kind
of person the defendant is, the victim,
where it happened, why it happen
[sic]. You have no idea right now, so
it wouldn't really be fair to ask you
what you're going to get. What we're
trying to find out is, is your mind
closed to one end or the other,
because when you say I never give
probation on a murder you just
haven't met the murder yet, because
I'm telling you, uhm, battered wife,
that's one where a lot of women give
probation if been battered years,
years, years, and finally said that's
enough.

 

 Defense Counsel: That can be a defense so I object.

 

 The Court: I'll sustain the objection.


 Appellant objected during voir dire that the prosecutor's
discussion of a battered wife was a defense, and now on appeal he
complains the battered wife hypothetical was used to commit the
potential jurors to a specific set of facts. Because the objection below
does not comport with that uttered on appeal, we conclude appellant
has waived any error. See Tex. R. App. P. 33.1; Penry v. State, 903
S.W.2d 715, 763 (Tex. Crim. App. 1995). Appellant's second point of
error is overruled.

3. Challenge for Cause


 In his third point of error, appellant contends the trial court erred
in denying his challenge for cause of veniremember number seven. 
Specifically, appellant contends the veniremember should have been
dismissed because he said he could not consider probation as a
possible punishment for the offense of murder.

 A challenge for cause may be made by the defense or the State if
the juror "has a bias or prejudice in favor or against the defendant." See
Tex. Code Crim. Proc. Ann. art. 35.16(a)(9) (Vernon 1989). The purpose
of allowing jurors to be challenged for cause is to guarantee fair and
impartial jurors for both the State and the defendant. See Smith v.
State, 907 S.W.2d 522, 529 (Tex. Crim. App. 1995). Prospective jurors
should be excused for cause only if their views would prevent or
substantially impair the performance of their duties as jurors. 
Wainwright v. Witt, 469 U.S. 412, 424 (1985); Moody v. State, 827
S.W.2d 875, 888 (Tex. Crim. App. 1992).

 When the trial court errs by overruling a challenge for cause
against a venireman, the defendant is harmed only if he uses a
peremptory strike to remove the venireman and thereafter suffers a
detriment from the loss of the strike. Demouchette v. State, 731
S.W.2d 75, 83 (Tex. Crim. App. 1986). Error is preserved only if
appellant used all his peremptory strikes, asked for and was refused
additional peremptory strikes, and was then forced to take an identified
objectionable juror whom appellant would not otherwise have accepted
had the trial court granted his challenge for cause or granted him
additional peremptory strikes so that he might strike the juror. Garcia
v. State, 887 S.W.2d 846, 852 (Tex. Crim. App. 1994); Adanandus v.
State, 866 S.W.2d 210, 220 (Tex. Crim. App. 1993); Satterwhite v.
State, 858 S.W.2d 412, 415 (Tex. Crim. App. 1993); see also Trevino v.
State, 815 S.W.2d 592, 611 n.5 (Tex. Crim. App. 1991); Demouchette,
731 S.W.2d at 83.

 The record reflects appellant used all of his peremptory strikes
during jury selection. He asked for another strike, and the trial court
denied the request. He then informed the court that he had been forced
to use a peremptory strike on veniremember number seven, which he
would have used on veniremember number forty-seven, who was
objectionable and sat on the jury. We conclude appellant has preserved
the error for our review.

 When we review a trial court's ruling on a challenge for cause, we
review the record as a whole to determine whether there is support for
that ruling. Satterwhite, 858 S.W.2d at 415. Because the trial court is
in the best position to view the demeanor of the veniremember and to
determine his or her credibility, we give great deference to the trial
court's ruling. Id. Absent an abuse of discretion, such a ruling will not
be disturbed. Id.; Williams v. State, 773 S.W.2d 525, 536 (Tex. Crim.
App. 1988).

 Appellant contends veniremember number seven expressed his
inability or unwillingness to consider probation for a person who
intentionally and knowingly caused someone else's death unless the
murder specifically involved euthanasia, a "mercy killing," or a "battered
wife" killing. The following occurred during individual voir dire
questioning of veniremember seven:

 Defense Counsel: He said that he could not consider
probation based upon your example
and he could not consider five years as
a minimum without consideration of
probation.

 

 The Court: Okay. Come on up. Uhm, [Defense
Counsel], basis for his question was to
make sure that the jury could consider
the entire range of prison time for a
person found guilty of murder. For
example, there are some people who
think that, you know, probation for
first degree felonies, that's fine, but if
a person is not going to receive
probation, the minimum punishment
they ought to receive is not five years,
it ought to be ten years. Where they
disagree with the minimum
punishment is for all first degree
felonies which includes murder. The
legislature has established the
minimum punishment all first degree
felonies at five years in prison. Can
you, can you consider that minimum
punishment of prison time per person
found guilty of a first degree felony? 
Did you understand my question?

 

 Venireperson: Yes, I do understand your question. Uh, my
way of thinking, if -- I would have to know
what the individual did. I don't care if it
was -- no, no, I'm just saying. I don't care
if it's his first time.

 

 The Court: Let me short circuit your answer. 
Here is why. The, uh -- we realize
we're throwing these punishment
ranges at y'all kind of out of the blue,
uhm, so some people say after I hear
or tell them what punishment, after I
explain, they take the position that I
don't care what the facts of the case
are, I don't care what his background
is, I can consider probation, but if I
decide that he should not be granted
probation I would never under any
circumstances then consider the
minimum of five years in prison. I
would only consider a minimum of
let's say ten years in prison.

 

 Venireperson: I'm still following you.

 

 The Court: That's my point. It's without
consideration. You know the person is
independently setting an arbitrary
minimum punishment they could
consider without consideration of the
facts of the case.

 

 Venireperson: No, no. That's not a problem. I can
understand. And as far as consideration of
the amount of time, my concern was that
the question that or the statement that was
made was then if the individual did this act
deliberately intending to hurt someone, to
me if an individual deliberately does this act
and deliberately kills this person, then I
don't care if it's his first time. I'm not
concerned with probation. The five to ten
years or ninety-nine years, that's not a
major concern. I can figure out whatever I
feel completely necessary but not the, the,
the idea that if a person is convicted of
doing this deed, they did it maliciously, they
did it intentionally and they knew what the
outcome could be if they did it. I don't care
if its his first time to ever do anything like
this again, the individual did it.

 

 The Court: Right.

 

 Venireperson: The individual has to pay.

 

 The Court: He is guilty.

 

 Venireperson: For his crime.

 

 The Court: He is guilty. Okay.

 

 Venireperson: Now as far as, you know, if, if the individual
goes out and has intentionally just
murdered the hell out of this person.

 

 The Court: Right.

 

 Venireperson: And I don't care what he did before, all I'm
concerned with is if he did this he is guilty
of this. This individual needs to be
punished.

 

 The Court: If you find that he did intentionally do
this, commit the offense of murder,
could you consider the entire range of
punishment from the minimum of five
years probation?

 

 Venireperson: I could consider it but chances are I will not
think of five years.

 

 The Court: What now?

 

 Venireperson: I said I can consider it, yes. I can consider
anything from probation on up, depending
on the circumstances, but ...

 

 The Court: Wow, wow, wow.

 

 Venireperson: Okay.

 

 The Court: I am not asking you because I am not
-- what I want to know is would you
ever consider five years in prison
under any circumstances across the
board for all first degree felony murder
cases? You would not ever consider
under.

 

 Venireperson: For all first degree felony murder cases
would I consider --

 

 Defense Counsel: Found someone intentionally cause
the death of another person. Could
you consider five years in prison?

 

 Venireperson: Probably no. If they intentionally --

 

 The Court: No, no, no.

 

 Venireperson: That's what he just said.

 

 The Court: Hold on a minute. I want to -- would
you always, then -- so have you set a
minimum in your mind that you were
[sic]?

 

 Venireperson: No, I have not.

 

 The Court: Well, that's my point.

 

 Venireperson: I could go way up past ninety-nine.

 

 The Court: Well, we don't have a way past
ninety-nine.

 

 Venireperson: I understand.

 

 The Court: We also don't have lower than five.

 

 Venireperson: I would be hard pressed to say that I would
ever say that for a crime of murder five
years is sufficient. That's not to say that
every individual case from here until the end
of time.

 

 The Court: Every individual does not deserve five
years. Every individual does not
deserve life in prison.

 

 Venireperson: This is true.

 

 The Court: Right. It's only those people where
you feel that that punishment is
appropriate.

 

 Venireperson: That's right.

 

 The Court: There are some jurors sitting out there
who are of the opinion that no one
ever deserves only five years in prison. 
If I rule out probation, everyone
automatically deserves more than five
years. Let's say ten years, everybody. 
They couldn't consider it under any
circumstances. Do you see my point?

 

 Venireperson: I see your point.

 

 The Court: They're setting their arbitrary
arrangement.

 

 Venireperson: That's already decided what goes along.

 

 The Court: Doesn't go with the law.

 

 Venireperson: This is true.

 

 The Court: That's what I'm trying to figure out.

 

 Venireperson: I understand.

 

 The Court: So you can?

 

 Venireperson: I can consider from five years up to 99 to
life.

 

 The Court: And from five years probation up to
ten years probation?

 

 Venireperson: That totally depends on all the
circumstances.

 

 The Court: Right.

 

 Venireperson: Your circumstance that you know this, but
for the majority of, of the cases, you know,
of murder cases.

 

 The Court: Granted probation is not for
everybody, life in prison is not for
everybody.

 

 Venireperson: I understand.

 

 The Court: Can you promise you keep [sic] an
open mind to the full range of
punishment?

 

 Venireperson: I think so.

 

 The Court: I got to get you to make me more of a
commitment. Here is why. If you're
picked to be on a jury the very first
thing that happens is you are asked to
raise your right hand, take your oath
as juror, an oath to render a true
verdict according to the law and
evidence so help you God. The
answer to that oath is either I will or I
will not. It's not like I think so.

 

 Venireperson: No, I know. I can do that.

 

 The Court: From the standpoint what that oath
means that's a promise to each side
that two things. You know what the
law requires you to do and you will do
it.

 

 Venireperson: That's right. I will.

 

 The Court: Can you do that?

 

 Venireperson: I will do that.

 

 The Court: Can you make them that promise?

 

 Venireperson: Yes, I can.

 

 The Court: That's all we need.

 

 Venireperson: But I cannot tell you if given the
circumstances that I will consider five years
as being a sufficient amount of time. Do
you see what I'm saying? I can listen to
your arguments and I can give you an
honest verdict, my feeling.

 

 The Court: Right.

 

 Venireperson: That's not a problem. The problem would
lie in where if an individual does something
horrible, such as murder, and then someone
says, well, because its his first time he
should only have five years even though he
took the life of this other person.

 

 The Court: But that's what you get to do in your
position as juror.

 

 Venireperson: That's fine.

 

 The Court: What you don't get to do under your
oath as juror is say I'm setting my
own punishment, I am not following
what the law is.

 

 Venireperson: Oh, no. No, no. I cannot do that. I won't
do that.

 

 The Court: Okay. You have some questions of
him?

 

 Defense Counsel: Yes, sir. I don't mean to argue. You
have very strong feelings about
probation is not something that should
be allowed for murder cases.

 

 Venireperson: It would depend if your parent were very ill
and you decided I can't put up with it,
they're begging you to help them relieve
them and you do it, you pull the plug on
them or you give them something that
eliminates that problem. No, I would have
no problem after hearing the evidence and
understanding what you did and why you
did it. I would not have a problem saying,
okay, in this case even though it is murder,
by law. I don't have a problem with saying
this person was suffering so badly that they
got to the point where they were begging
you take their life, help you to relieve them
of this. I don't have a problem saying five
years probation, ten years probation.

 

 Defense Counsel: Or the example the judge gave you.

 

 Venireperson: Or the example of the judge. I have a
daughter. I would do the same thing in a
heart beat.

 

 Defense Counsel: I understand that.

 

 Venireperson: If I go to jail for it, that's fine.

 

 Defense Counsel: Other than -- but what I'm gathering
is except the examples like the
prosecutor's, the battered woman.

 

 Venireperson: That's right.

 

 Defense Counsel: Except for the euthanasia the judge
used, the other judge's example, you
be hard pressed to consider probation. 
That you have strong feelings if you
found someone of intentionally or
knowingly cause someone's death
that you don't think that probation is
appropriate.

 

 Venireperson: I don't feel probation is appropriate for
someone deliberately causing someone
else's death other than like what we were
just discussing.

 

 Defense Counsel: Also I get the impression that you also
think that someone intentionally or
knowingly caused someone's death
that five years in prison would also not
be appropriate.

 

 Venireperson: It might not be.

 

 Defense Counsel: Because?

 

 Venireperson: I don't feel that an individual has to be
looked at based on where they grew up or
what's happened to them throughout their
life. The individual makes a decision. 
Person chooses to do what they do and you
had better be ready to stand in front of a
judge for your decision, state whether it's
right or wrong.

 

 Prosecutor: He said repeatedly in five hundred
different ways depends on the murder
we're going to try in this courtroom on
what he would do. He doesn't have
to say he would do it. He can
consider it, he said that repeatedly,
whether it's likely or not doesn't
matter.

 

 The Court: I can come up with one situation. I
came up with one situation where
most people sat out there thought,
you know, the guy who killed the guy
who --

 

 Venireperson: Uh, I remember that. You're right, I would
have bought him dinner.

 

 The Court: I could consider probation for him. 
One of these lawyers come up in the
situation, the euthanasia child, you
know, pulls the plug on parents
intentionally, it's murder.

 

 Venireperson: That's right, it is.

 

 The Court: Can you understand your mind [sic]
that there may be more? We don't
have all day.

 

 Venireperson: Right, there may be other things to go along
that line.

 

 The Court: Right.

 

 Venireperson: I am not completely blinded to the fact that
there are other things other than
euthanasia.

 

 The Court: Those two or, or other examples;
battered wife.

 

 Venireperson: I understand there are other things that
there may be evidence to warrant the type
of behavior.

 

 The Court: So, once again, will you promise to
keep an open mind at the full range of
punishment?

 

 Venireperson: Yes, I can do that.

 

 The Court: Anything else?

 

 Defense Counsel: Your initial reaction to the question
was you could not consider probation. 
That's not something you thought
about or feel or you feel strongly
about?

 

 Venireperson: It would depend, yes, if I find that an
individual has deliberately shot an
individual, they knew what they were going
to do, they went out, they did it, they chose
to do this, yeah, I would find a real, real
difficulty, even want to think about
probation. But as far as a punishment
phase of five years to ninety-nine years to
life, I can sit there and think about
somebody what should be done. 


 In a criminal trial, both the defendant and the State have the right
to select from jurors who believe in the full range of punishment. 
Rosales v. State, 4 S.W.3d 228, 233 (Tex. Crim. App. 1999); Johnson
v. State, 982 S.W.2d 403, 405 (Tex. Crim. App. 1998). Prospective
jurors must be able, in a sense, to conceive both of a situation in which
the minimum penalty would be appropriate and of a situation in which
the maximum punishment would be appropriate. Rosales, 4 S.W.3d at
233; Sadler v. State, 977 S.W.2d 140, 142 (Tex. Crim. App. 1998). 
Prospective jurors must be able to accept that, for the offense in
question, the minimum legal punishment will be appropriate in some
circumstances and the maximum legal punishment will be appropriate
in some circumstances. Id. A venireperson's complete inability to
consider the full range of punishment, including probation, in a case
where the defendant has not been convicted of any prior felony, would
render the venireperson unfit for jury service. See Maddux v. State, 862
S.W.2d 590, 600 n.2 (Tex. Crim. App. 1993). In assessing a
venireperson's capacity to consider the full range of punishment, we
will not focus on an isolated answer or passage of the venireperson's
testimony, but on his voir dire testimony as a whole. See Allridge v.
State, 850 S.W.2d 471, 482 (Tex. Crim. App. 1991).

 The proper question to determine bias against the law is
"whether, in the proper [murder] case, where the facts justify it, and the
law allows it, the [prospective juror] can fully and fairly consider the
entire range of punishment, including the minimum and maximum." 
See Sadler, 977 S.W.2d at 142. The question is not whether the
prospective jurors are willing to consider the entire range of punishment
for the offense as appellant committed it. Id. at 143. To the contrary,
the law requires jurors to use the facts of the case to tailor the
punishment to the crime as committed by the guilty defendant. Id. "A
prospective juror is not challengeable for cause based on inability to
consider the full range of punishment so long as he can consider the full
range of punishment for the offense as defined by the law." Id. Thus,
a prospective juror can not be challenged for cause because he will use
the facts to determine punishment. 

 Appellant asserts veniremember number seven's statements that
he could only consider probation in a situation involving a mercy killing
or battered wife establishes that he was biased as a matter of law. 
Appellant relies on Sunday v. State, 745 S.W.2d 436 (Tex.
App.--Beaumont 1988, pet. ref'd). In Sunday, a prospective juror said
she could not consider probation in a murder case unless it was a
mercy killing. Id. at 437. The Beaumont Court of Appeals found that
the prospective juror was disqualified under article 35.16(c)(2) because
she had a bias or prejudice against the law. See id. at 438-39. The
court held that by restricting probation to one circumstance, the
prospective juror "would create her own statutes concerning minimum
punishment for the offense of murder." Id. The court said that "while
every person is entitled to hold and express such beliefs, we believe a
criminal defendant has the statutory right under article 35.16 to have
a jury assess punishment after consideration of the full range of
punishment for his offense as prescribed by the legislature." Id.

 The present situation is unlike Sunday because the veniremember
in this case did not limit his ability to give probation to situations
involving mercy killings and battered wives. While these examples
were discussed, he said, "I understand there are other things that there
may be evidence to warrant the type of behavior" and he could keep an
open mind to the full range of punishment. Although the Sunday court
is correct in its assertion that a jury must be able to consider the full
range of punishment for an offense, we respectfully disagree with the
court's ultimate decision because it is contrary to the holding in Sadler. 
See Sadler, 977 S.W.2d at 142 ("Jurors must be able to consider the full
range of punishment for the crime as defined by the law. 'They must
be able, in a sense, to conceive both of a situation in which the
minimum penalty would be appropriate and of a situation in which the
maximum penalty would be appropriate.'"). The veniremember in
Sunday conceived of a situation where the minimum penalty for murder
would be appropriate, i.e. mercy killing.

 After reviewing the record, we conclude veniremember number
seven conceived of multiple situations in which probation would be
appropriate, and he indicated he could consider the full range of
punishment, including probation. Veniremember number seven's
discussion with the court established his willingness to consider the
facts of the case and tailor the punishment to the case. Accordingly,
we hold the trial court did not abuse its discretion in denying
appellant's motion to strike veniremember number seven for cause. 
Appellant's third point of error is overruled.

C. Improper Jury Argument


 In his fourth point of error, appellant contends the trial court erred
in denying his motion for mistrial based on the prosecutor's improper
jury argument. Specifically, appellant asserts the prosecutor was
arguing outside the record and "was misrepresenting to the jury that if
they believed appellant's testimony that the gun went off accidentally,
and they found appellant guilty of manslaughter instead of murder, 'by
law' appellant would go free and not have to go to jail/prison." We
disagree.

 In the State's closing argument, the prosecutor stated:

 Prosecutor: . . . So what's the only defense that a
murderer can come up in that
situation? I didn't mean to do it. 
Every murderer wants to be convicted
of manslaughter. Every murderer
wants to get a charge on
manslaughter so maybe the jury --

 

 Defense Counsel: Your Honor, I object. The court is the
one giving the charge, not a person
accused of a crime.

 

 The Court: All right, let's move along.

 

 Defense Counsel: My ruling, judge?

 

 The Court: Overruled.

 

 Prosecutor: Every murderer wants to get convicted
of manslaughter because its a lower
felony charge, all right? Obviously you
don't have to believe what the
defendant said because if you had to
believe what the defendant said by
law our jail would be empty.

 

 Defense Counsel: Your Honor, I object. That's a
misstatement of the law. There's no
evidence of that. That's outside the
record.

 

 The Court: Sustained. Let's move along.

 

 Defense Counsel: Ask the court to instruct the jury to
disregard the last statement.

 

 The Court: Please disregard the last statement by
prosecutor.

 

 Defense Counsel: Ask for a mistrial, Your Honor.

 

 The Court: Denied.(2)

 

 Prosecutor: You also don't have to give his
testimony any more weight than any
other witness that testified. You get to
judge his testimony critically as any
other witness, okay? 

 

 Proper jury argument must fall within one of four categories: (1)
summary of the evidence; (2) reasonable deduction from the evidence;
(3) in response to argument of opposing counsel; and (4) plea for law
enforcement. Borjan v. State, 787 S.W.2d 53, 55 (Tex. Crim. App.
1990); Madden v. State, 721 S.W.2d 859, 862 (Tex. Crim. App. 1986);
Alejandro v. State, 493 S.W.2d 230 (Tex. Crim. App. 1973). A
prosecutor may argue the impact of a verdict on the community. 
Borjan, 787 S.W.2d at 55; Caballero v. State, 919 S.W.2d 919, 924
(Tex. App.--Houston [14th Dist.] 1996, pet. ref'd). The State may not
use her closing argument to admit evidence which is outside the record
and prejudicial to the accused. Borjan, 787 S.W.2d at 57 (citations
omitted). "Reference to facts that are neither in evidence, nor inferable
from the evidence is improper." Id. (citations omitted). 

 "A prosecuting attorney is permitted in her argument to draw from
the facts in evidence all inferences which are reasonable, fair and
legitimate, but she may not use the jury argument to get before the jury,
either directly or indirectly, evidence which is outside the record." 
Borjan, 787 S.W.2d at 57; Jordan v. State, 646 S.W.2d 946, 948 (Tex.
Crim. App. 1983); see also Contreras v. State, 838 S.W.2d 594, 606
(Tex. App.--Corpus Christi 1992, pet. ref'd) (quoting from Barnard v.
State, 730 S.W.2d 703, 718 (Tex. Crim. App. 1987), that "It is well
settled that the prosecutor may argue his opinions concerning issues
in a case so long as the opinions are based on the evidence in the
record."). 

 It is well-settled that even if a prosecutor's jury argument is
improper, an instruction by the trial judge to the jury to disregard the
improper argument is usually sufficient to cure the error. Melton v.
State, 713 S.W.2d 107, 114 (Tex. Crim. App. 1986); Logan v. State, 698
S.W.2d 680, 682 (Tex. Crim. App. 1985). Reversible error occurs only
when a statement is so inflammatory that its prejudicial effect cannot
reasonably be removed by such admonition. McKay v. State, 707
S.W.2d 23, 33 (Tex. Crim. App. 1985); Blansett v. State, 556 S.W.2d
322, 328 (Tex. Crim. App. 1977). In order to fall within this
requirement, the argument must be extreme, manifestly improper, inject
new and harmful facts into the case, or violate a mandatory statutory
provision. Borjan, 787 S.W.2d at 56-57; Phillips v. State, 701 S.W.2d
875, 892 (Tex. Crim. App. 1985).

 After reviewing the record, we conclude the State's appeal to the
jury was not improper. The prosecutor's statement, "every murderer
wants to be convicted of manslaughter," is based on defense counsel's
assertion in his closing argument that appellant's firing of the weapon
was an accident, that appellant did not have the specific intent to be
found guilty of murder, and that the jury should resolve the issue by
finding appellant guilty of the lesser included offense of manslaughter.

 The prosecutor's statement that the jury did not have to believe
the defendant is based on the simple fact that the jury is the sole judge
of credibility of the witnesses and they could choose to believe or
disbelieve the testimony of appellant. See Chambers v. State, 805
S.W.2d 459, 461 (Tex. Crim. App. 1991) (as fact finder, the jury is the
exclusive judge of the credibility of the witnesses and the weight to be
afforded their testimony); Penagraph v. State, 623 S.W.2d 341, 343
(Tex. Crim. App. 1981) (the jury is free to accept one version of the
facts, reject another, or reject all or any of a witness's testimony).

 Finally, the prosecutor's statement "if you had to believe what the
defendant said by law our jail would be empty" initially appears
prejudicial. However, after closer analysis we conclude it is simply a
further assertion that the jury is the judge of the credibility of appellant's
testimony that the death of Michael Ramirez was an accident. While
the prosecutor's statement is overly dramatic, it exemplifies the
importance of the jury's role in judging the credibility of a defendant as
a witness, because if the jury was required, by law, to believe a
defendant's version of the facts, the criminal justice system would
begin to break down, i.e. the jail would be empty. We conclude the
prosecutor's argument is simply a response to defense counsel's
closing argument and is not improper. Even assuming, arguendo, that
the comment was improper, we conclude the trial court's instruction to
the jury to disregard the comment cured any harm. Appellant's fourth
point of error is overruled.

 The judgment of the trial court is affirmed.


 FEDERICO G. HINOJOSA

 Justice


Do not publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this the

31st day of August, 2000.


1. Tex. Pen. Code Ann. § 19.02 (Vernon 1994).
2. In this case, appellant took the correct steps in preserving his objection
for the record: (1) he objected to the prosecutor's statement; (2) he requested
an instruction to disregard; and (3) he moved for a mistrial. See Brooks v.
State, 642 S.W.2d 791, 798 (Tex. Crim. App. 1982); Koller v. State, 518
S.W.2d 373, 375 (Tex. Crim. App. 1975).