James DEMOUCHETTE, Appellant,

v.

The STATE of Texas, Appellee.

No. 69143.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 24, 1986.
Certiorari Denied June 8, 1987.
See 107 S.Ct. 3197.

See also, 633 S.W.2d 879, 591 S.W.2d
488.

Kristine C. Woldy, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. & J. Harvey Hudson & Ira Jones, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A. Penal Code, Sec. 19.03(a)(2). After finding appellant guilty, the jury returned affirmative findings to the special issues under Art. 37.071(b), V.A.C.C.P. Punishment was assessed at death.

Omitting the formal parts, the indictment charged that appellant did, "while in the course of committing and attempting to commit robbery, intentionally cause the death of Scott K. Sorrell, hereafter styled the complainant, by shooting the complainant with a gun."

Appellant challenges the sufficiency of the evidence to prove that he committed the aggravating offense of robbery, either acting alone or as a party.

The evidence showed that appellant's sister had worked at a Pizza Hut at 5426 Antoine in Houston. Sometime in early October of 1976 she had ceased working there. At about 11:45 p.m. on the evening of October 17, the manager of the Pizza Hut, Geoffrey Hambrick, was preparing to close for the night when a person named Harper entered and ordered a pizza. Hambrick took the order and Harper sat down in the booth closest to the entrance. Shortly before midnight Chris Demouchette, appellant's brother, entered the Pizza Hut and asked Harper "Is the manager here?" Hambrick came to the counter. Demouchette ordered a beer and sat at a table nearby.

A few minutes later appellant walked in and stood silently at the counter near the cash register. Harper noticed that appellant did not order anything, but that appellant remained standing near the counter by the door. It also became apparent to Harper that appellant knew Chris Demouchette, who was still seated at a table drinking beer. Harper found the circumstances "strange" and felt an urge to leave. When Hambrick brought out his pizza, Harper paid and left the restaurant a few minutes after midnight.

At about this time Scott Sorrell and Chuck White entered. Sorrell was an assistant manager for Pizza Hut. Hambrick had agreed to show him how to keep books that evening. After Sorrell and White arrived, Hambrick locked all the exterior doors.

Sorrell recognized one of the Demouchettes, and invited the two brothers to join the other three men for a beer. Appellant sat at a booth with White. Chris Demouchette sat at a table with Sorrell and Hambrick. After about five minutes of conversation, Hambrick heard White say, "I'd think twice before I pulled that trigger." Hambrick turned and saw appellant holding a large caliber revolver in White's face. Hambrick saw appellant fire one shot directly into White's head. Appellant aimed the weapon at Hambrick. Hambrick saw White slump face down on the table and heard a second shot. The bullet struck Hambrick in the right side of his head near the ear. The impact knocked Hambrick back against the edge of a booth, from which he recoiled forward onto the table. Still conscious, Hambrick lay motionless. He then heard a third shot and a sound he took to be Sorrell falling backwards.

Hambrick testified that he "heard them run in the back room of the Pizza Hut, and it sounded like they were tearing the place apart. You could hear things falling off the walls and things being thrown around and you could tell they were ransacking the place." During this period, Hambrick also heard a gurgling sound coming from Sorrell. Hambrick then heard the two men return to the dining room, and heard appellant say, "Get the keys." At about that point, there was another shot and the gurgling noise from Sorrell stopped. (A doctor testified that a bullet severed Sorrell's

jugular vein and carotid artery, and that Sorrell bled to death.)

Hambrick felt one man grab him beneath his arms and raise him up slightly while the second man searched his pockets until he found Hambrick's keys. Hambrick heard the keys jangling at the front door, and then heard appellant say, "Out the back-door, Chris." Hambrick heard the two run to the back, heard the deadbolt click, and nothing more.

Hambrick remained motionless for several minutes. He then got to his feet, locked the back door, and called the police. Two Houston police officers arrived at the scene while Hambrick was still talking to the dispatcher.

The investigation showed that the cash register drawer was open and empty. A small amount of money was scattered on the floor. In the restaurant office, things had been pulled from the shelves, drawers had been opened, and papers were strewn about the room. It was discovered that stereo equipment had been taken from the office.

Hambrick testified that as the manager of the Pizza Hut and the only employee on duty at the time of the offense, he had care, custody and control of the cash in the register and the stereo equipment in the office.

Appellant contends, essentially, that because the State failed to prove a completed theft the evidence is insufficient to show that appellant committed murder in the course of committing robbery. Appellant argues as follows:

"The sum total of all the state's evidence shows, at best, that Appellant was a party to the 'theft' of some keys. It was never asked whether or not the keys were recovered. An equally believable scenario, however, based on the state's witnesses, was that with all the doors locked from the inside, the keys had to be obtained, not to appropriate them, but to use them temporarily to escape the premises. There is a distinct possibility that Mr. Hambrick, while not being aware that he was unconscious for a time, was in fact unconscious and that

someone else came in and took the stereo that was discovered missing. The state's evidence with regard to the money in the cash register was so self-contradictory as to mean nothing. The only sure thing was that by the time police arrived, the cash drawer was empty.

"The state failed to show that Appellant unlawfully appropriated any property or that he aided or assisted anyone else in doing so, except perhaps with regard to the keys discussed above."

■ At the outset it should be noted that proof of a "completed theft" is not required. The trial court charged the jury that, " 'In the course of' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of the offense alleged." In applying the law to the facts, the court charged the jury "Now therefore, if you find from the evidence beyond a reasonable doubt that ... [appellant] ... did then and there unlawfully *while in the course of committing or attempting to commit the robbery of Geoffrey Hambrick,* intentionally caused the death of Scott K. Sorrell ... by shooting the Complainant with a gun, then you will find the [appellant] guilty of capital murder." [our emphasis.]

■ Appellant and his brother entered the restaurant, separately, shortly before closing time. Chris Demouchette asked Harper "Is the manager here?" After brief conversation with the others, appellant shot White, Hambrick, and Sorrell. Hambrick then heard both men ransack the office. Stereo equipment was taken, and the cash drawer was left empty. The evidence was sufficient to prove beyond a reasonable doubt that appellant caused the death of Sorrell in the course of attempting to commit robbery of Hambrick. The ninth ground of error is overruled.

In his tenth ground of error, appellant contends the trial court erred in refusing to give either one of two special requested instructions. The trial court instructed the jury, in pertinent part, as follows:

"A person commits a robbery if, in the course of committing theft, as defined hereinafter, and with intent to obtain or maintain control of the property, he intentionally causes bodily injury to an individual or intentionally threatens or places an individual in fear of imminent bodily injury or death.

"...

"Before you would be warranted in convicting the Defendant of capital murder, you must find from the evidence beyond a reasonable doubt not only that on the occasion in question the Defendant, James Demouchette, acting alone or together with Chris Demouchette, as a party, was engaged in the commission or attempted commission of the felony offense of robbery, if any, of Geoffrey Hambrick, as defined in this charge, but also that during the commission of the robbery or attempted commission thereof, if any, the Defendant, James Demouchette, shot Scott K. Sorrell with a gun with the intention of thereby causing his death. Unless you find from the evidence beyond a reasonable doubt that the Defendant, James Demouchette, on said occasion, specifically intended to kill the said Scott K. Sorrell when he shot his [sic] with a gun, if he did shoot him, you cannot convict him of the offense of capital murder."

In place of the latter paragraph, appellant requested the trial court to give either one of the following special charges:

"Before you would be warranted in convicting the Defendant of capital murder you must find from the evidence beyond a reasonable doubt not only that on the occasion in question the Defendant did intentionally murder Scott K. Sorrell as defined in this charge, but also during the commission of the murder, if any, the Defendant committed the offense of robbery of Geoffrey Hambrick, fled the robbery of Geoffrey Hambrick or attempted to rob Geoffrey Hambrick.

"Unless you find from the evidence beyond a reasonable doubt that the Defendant on said occasion specifically intended to rob the said Geoffrey Hambrick when he shot Scott K. Sorrell, if he did shoot

Scott K. Sorrell, you cannot convict him of the offense of capital murder."

or:

"Before you would be warranted in convicting the Defendant of capital murder you must find from the evidence beyond a reasonable doubt not only on the occasion in question the Defendant did intentionally murder Scott K. Sorrell as defined in this charge, but also during the commission of the murder, if any, the Defendant committed the offense of robbery or attempted to rob Geoffrey Hambrick.

"Unless you find from the evidence beyond a reasonable doubt that the Defendant on said occasion specifically intended to rob the said Geoffrey Hambrick when he shot Scott K. Sorrell, if he did shoot Scott K. Sorrell, you cannot convict him of the offense of capital murder."

[our emphasis.]

■ The trial court's charge "distinctly set[s] forth the law applicable to the case" in compliance with Art. 36.14, V.A.C.C.P. The trial court did not err in refusing to give appellant's special requested charges. The tenth ground of error is overruled.

■ In his eleventh ground of error, appellant contends that the trial court erred in overruling a motion to quash the indictment for failure to allege both an intentional murder and an intentional robbery. The indictment alleged that appellant did, "while in the course of committing and attempting to commit robbery, intentionally cause the death of Scott K. Sorrell ... by shooting [him] with a gun." Appellant argues as follows:

"... a person commits capital murder if he commits murder as defined under Section 19.02(a)(1) of the Penal Code and, in addition, 'intentionally commits the murder in the course of committing or attempting to commit ... robbery.' Sec. 19.03[ (a)(2), supra]. Section 19.02(a)(1) states that 'A person commits [murder] if he intentionally or knowingly causes the death of an individual.' Thus combined, a person commits capital murder

who intentionally causes the death of an individual while intentionally doing so in the course of committing or attempting to commit robbery."

Appellant concludes that the trial court erred by overruling the motion to quash "for failure to allege the double intent required by the capital murder statute."

The capital murder statute has no "double intent" requirement. See *Ellis v. State*, 726 S.W.2d 39 (1986). The phrase "intentionally commits the murder" in Sec. 19.03(a)(2) makes "intentional" (Sec. 6.03(a)) the culpable mental state necessary for conviction of capital murder under 19.03(a)(2), and excludes the possibility of a "knowing" capital murder under 19.03(a)(2). Ground of error number eleven is overruled.

In his twelfth ground of error, appellant contends the trial court erred in failing to require the jury to find, in order to convict, that appellant "did then and there unlawfully while in the course of *intentionally* committing or attempting to commit the robbery of Geoffrey Hambrick intentionally caused the death of Scott K. Sorrell, [etc.]". [our emphasis.] The offense of robbery is established by proof of any one of several combinations of culpable mental states. See V.T.C.A. Penal Code Sec. 29.02. We have stated that the elements of the aggravating offense need not be set out in that portion of the charge applying the law to the facts. *Granviel v. State*, 723 S.W.2d 141 (1986); *Garrett v. State*, 682 S.W.2d 301 (Tex.Cr.App.1984). The twelfth ground of error is overruled.

In his fourteenth ground of error, appellant contends that the trial court erred in failing to define the term "deliberate" in the court's instructions to the jury at the punishment phase. We have repeatedly held that the trial court need not define the word "deliberate" in its charge to the jury on punishment. *Cannon v. State*, 691 S.W.2d 664 (Tex.Cr.App.1985) and cases cited therein. The fourteenth ground of error is overruled.

In his fifteenth ground of error, appellant contends that Article 37.071 violates the Fifth, Eighth, and Fourteenth Amendments in that the special issues set out in the statute "do not allow for the jury to consider or apply mitigating evidence in their deliberation and because the statute does not inform the jury how to apply the mitigating evidence in light of the aggravating language of the special issues." The Texas capital murder scheme, including the special issues under Article 37.071, supra, was held to be constitutional in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). The fifteenth ground of error is overruled.

In his eighth ground of error, appellant contends that the trial court erred in overruling his plea in bar of prosecution based on the statute of limitations. Appellant argues that capital murder is subject to the three-year limitation for "all other felonies" pursuant to Article 12.01(4), V.A.C.C.P. The indictment alleges that the offense occurred on or about October 18, 1976. At the time he presented his plea in bar, appellant contends, the indictment showed on its face that prosecution was barred by the three-year statute of limitations.

Article 12.01, supra, reads as follows in pertinent part:

"Except as provided in Article 12.03, felony indictments may be presented within these limits, and not afterward:

"(1) No limitation: murder and manslaughter;"

Appellant claims that capital murder is distinct from murder for purposes of limitation, that by its failure to name capital murder in Art. 12.01(1) that section excludes capital murder by implication, and that capital murder must therefore be included in 12.01(4), the "all other felonies" section, because capital murder appears by name nowhere else in the limitation statute. Capital murder is a species of murder and as such is provided for by Article 12.01(1). The eighth ground of error is overruled.

In his first ground of error appellant contends that the trial court erred in allowing the prosecutor to voir dire the panel on

culpability for murder under the law of parties. Appellant claims there was no evidence in the case to suggest that he was guilty as a party to the commission of the murder. All the evidence known to the prosecutor at the time of voir dire, appellant claims, showed that appellant himself shot and killed Sorrell. Consequently, appellant concludes, because the panel was qualified on the legal culpability of a non-triggerman, it was "that much easier" for the jury to vote for guilt and to answer yes to the special issues when the evidence showed that appellant *was* the triggerman.

Article 35.16(b)(3), V.A.C.C.P. provides as follows:

"A challenge for cause may be made by the State for any of the following reasons:

". . .

"3. That [the juror] has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment."

■ Appellant contends, in effect, that the law on which the State is entitled to rely (and therefore to voir dire the panel on) is only that applicable to the evidence known to the State at the time of voir dire. The State, however, has no right of discovery into the defendant's case. Moreover, the State has no control over the defendant's choice of whether he will testify to his version of the facts. The State's knowledge of the evidence at the time of voir dire does not, therefore, exhaust the possible versions of the facts that might be presented at trial. And it is the evidence presented at trial that the State must rely on for conviction and punishment. Article 36.14 requires the trial court to deliver to the jury a written charge "distinctly setting forth the law applicable to the case". It follows that the law applicable to the evidence as presented at trial is the law on which the State is entitled to rely for conviction and punishment. Therefore the State must be permitted to anticipate, within reason, the evidence as it might develop at trial, and to qualify the jury on the law applicable to these various configurations.

See *Phillips v. State*, 701 S.W.2d 875 (Tex. Cr.App.1985).

Appellant argues that:

"The State had available to it the entire transcript of the trials of both Chris and James Demouchette, [this court granted appellant habeas corpus relief from his first conviction for capital murder. See *Ex parte Demouchette*, 633 S.W.2d 879 (Tex.Cr.App.1982).] the statement of Chris Demouchette that James had done the shooting, its offense reports, and grand jury testimony. There could have been no doubt in the mind of the prosecutor that there was NO evidence to show anyone other than appellant had pulled the trigger on the weapon."

■ Given the evidence from the previous trials, it might well be hard to doubt that appellant shot and killed the victim. Nonetheless, with the knowledge that there were two participants in the murder-robbery the prosecutor could not discount the possibility that appellant would take the stand, deny that he shot the victim and place the blame on his brother. To avail himself fully of the law applicable to that contingency, it was entirely reasonable of the prosecutor to qualify the jurors on the culpability of a non-triggerman under the law of parties. The first ground of error is overruled.

In his second ground of error, appellant contends that the trial court erred in giving a general charge on the law of parties at the guilt-innocence phase. The record reflects that the trial court gave a correct, general charge setting out the law of criminal responsibility for the conduct of another in the terms of V.T.C.A. Penal Code Sec. 7.01(a) and 7.02(a)(2). The trial court applied the law of parties to the facts of the offense as that law related to the robbery portion of the offense, as follows:

"Before you would be warranted in convicting Defendant of capital murder, you must find from the evidence beyond a reasonable doubt not only that on the occasion in question the Defendant, James Demouchette, acting alone or together with Chris Demouchette, as a party, was engaged in the commission or

attempted commission of the felony offense of robbery, if any, of Geoffrey Hambrick, as defined in this charge, but also that during the commission of the robbery or attempted commission thereof, if any, the Defendant, James Demouchette, shot Scott K. Sorrell with a gun with the intention of thereby causing his death...."

Appellant argues as follows:

"Had the entire parties theory, from the beginning of the case, been applied only to the robbery, it might possibly have been appropriate. However, the definitional portions of the charge set out above were not limited to the robbery portion of the indictment. Seven of the twelve jurors serving had been voir dired about a parties charge as it applied to the murder portion of the indictment, including whether or not they could give the death penalty to a non-triggerman, in violation of *Enmund v. Florida*, [458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982)], supra."

■ Appellant concludes that the general charge setting out the law of parties denied him due process of law. This contention is without merit. The trial court's charge clearly requires the jury to find that appellant himself shot the victim, intending to cause the victim's death. The second ground of error is overruled.

In his third ground of error, appellant contends that "the trial court erred in excusing venireperson DeSouza for cause based on her position on circumstantial evidence." The record reflects that, after a lengthy voir dire covering the topics of circumstantial evidence and the potential culpability of a non-triggerman under the law of parties, the State challenged the venireman for cause. Appellant states in his brief, "When the challenge for cause was sustained in the case of this venireperson, the trial court indicated that it was both on parties and on circumstantial evidence." Appellant concedes that "Certainly, if one of the bases for exclusion was valid, there is no error."

■ In our disposition of ground of error number one above, we have held that the trial court did not err in allowing the State to voir dire the panel on the law of parties as applied to murder. Appellant has not claimed that the trial court's excusal of this venireman was in error with respect to the venireman's inability to follow the law of parties. Appellant has claimed error in only one of the bases of exclusion, circumstantial evidence. Because appellant does not challenge the second basis, and because appellant concedes that if one is valid there is no error, any error in the first basis will not require review or reversal.

■ Nevertheless, we have reviewed appellant's claim and find it to be without merit. The record reflects the following exchange at the end of the voir dire of this venireman:

"Q. [Prosecutor] Do you feel that you could, do you feel that you could give a man the death sentence based solely upon circumstantial evidence knowing that no one ever saw him pull the trigger?

"A. It would depend on the evidence.

"Q. You feel there is evidence we could show you, circumstantial evidence?

"A. And the facts.

"Q. And the facts except that there is no eyewitness?

"A. Except that there is no eyewitness, right.

"Q. And you could go ahead and convict him of capital murder and then give him a death sentence without an eyewitness?

.     .     .     .     .

"A. I just cannot give the answer.... It would be difficult for me to give the death sentence for somebody that I haven't seen, okay?

.     .     .     .     .

"Q. Please answer the question.

"A. I answered it, didn't I?

"Q. What was your answer?

"A. I said it would be difficult for me to accept [sic] that decision.

"Q. Is that a yes or a no?

"A. No."

There was no error in sustaining the State's challenge for cause. The third ground of error is overruled.

In his fourth ground of error, appellant contends that the trial court erred in denying his challenge for cause against venireman Wiltz. Appellant used a peremptory strike to remove the venireman from the panel. Appellant states that "While it is true that all additional peremptories requested by defense counsel were granted, at the time the final juror was selected, appellant had no further peremptory challenges and requested no more. However, throughout the case, beginning early in the voir dire, defense counsel repeatedly requested up to four additional challenges, of which two were ultimately given, one at a time." Appellant seems to be claiming that, because he was not left standing with two unused peremptory strikes at the conclusion of voir dire, he has preserved error and shown harm.

■■■■ When the trial court errs in overruling a challenge for cause against a venireman, the defendant is harmed only if he uses a peremptory strike to remove the venireman and thereafter suffers a detriment from the loss of the strike. Error is preserved only if the defendant exhausts his peremptory challenges, is denied a request for an additional peremptory challenge, identifies a member of the jury as objectionable and claims that he would have struck the juror with a peremptory challenge. *White v. State,* 629 S.W.2d 701 (Tex.Cr.App.1981), cert. denied, 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982); *Sanne v. State,* 609 S.W.2d 762 (Tex.Cr. App.1980), cert. denied, 452 U.S. 931, 101 S.Ct. 3067, 69 L.Ed.2d 432 (1981); *O'Bryan v. State,* 591 S.W.2d 464 (Tex.Cr.App.1979), cert. denied, 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 846 (1980); *Nastu v. State,* 589 S.W.2d 434 (Tex.Cr.App.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980). By appellant's own concession, the trial court awarded him an additional strike each time he requested one. Ground of error number four is overruled.

Grounds of error five, six, and seven all relate to venireman O'Neill. Both the State and appellant found him objectionable and sought the trial court's approval to "strike him by agreement." The trial court refused to allow the procedure, and required instead that one party use a strike. The State challenged for cause, and the trial court overruled the challenge. Appellant challenged for cause, and the trial court overruled the challenge. Appellant then used a peremptory strike against the venireman.

■■■■ Appellant now contends, in three grounds of error, that the trial court erred in overruling the joint agreement to excuse the venireman, in overruling the *State's* challenge for cause, and in overruling his own challenge for cause.

We need not deal with these issues because appellant has failed to preserve the error, if any. After appellant struck this venireman, he had one peremptory strike remaining. He used this remaining strike. Appellant then sought, and received, two additional peremptory strikes. Appellant sought no further peremptory strikes. One of these two additional strikes compensated him for the use of a peremptory strike to remove venireman Wiltz (see ground of error number four). The other additional strike compensated him for his use of a strike against venireman O'Neill. Appellant has failed to preserve the error, if any, or to show harm. Grounds of error five, six, and seven are overruled.

The judgment of the trial court is affirmed.

CLINTON, J., concurs in the result.