**James DEMOUCHETTE, Petitioner–Appellant,**

v.

**James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.**

No. 92–2077.

United States Court of Appeals, Fifth Circuit.

Sept. 9, 1992.

Certiorari Denied Sept. 21, 1992.

See 113 S.Ct. 27.

Michael B. Charlton, David Cunningham (Court-appointed), Houston, Tex., for petitioner-appellant.

William Zapalac, Asst. Atty. Gen., Dan Morales, Atty. Gen., Austin, Tex., for respondent-appellee.

Before POLITZ, Chief Judge,
HIGGINBOTHAM and DUHÉ, Circuit
Judges.

POLITZ, Chief Judge:

James Demouchette, whose execution
has been set by the Texas authorities for
September 22, 1992, seeks federal habeas
relief and a stay of execution. The district
court denied the habeas request, denied a
certificate of probable cause and recalled
its previously issued stay of execution. In
his motions for CPC and for a stay of
execution Demouchette urges error under
*Penry v. Lynaugh*.[1] Concluding that the
disposition of this matter is directed by our
recent *en banc* decision in *Graham v. Collins*,[2] we deny both the motion for CPC and
the motion for stay of execution.

### Background

As detailed by the Texas Court of Criminal Appeals,[3] Demouchette and his brother
Chris entered a Pizza Hut restaurant in
Houston, Texas around midnight of October 17, 1976, shortly before closing. Manager Geoffrey Hambrick locked up and the
Demouchettes joined Hambrick, Scott Sorrell, the assistant manager and an acquaintance of one of the brothers, and Chuck
White, a friend of Sorrell's, at a booth and
table. After a few minutes of idle conversation Hambrick, hearing White say, "I'd
think twice before I pulled that trigger,"
turned to see Demouchette shoot White in
the head with a large caliber revolver. Demouchette then shot Hambrick. The bullet

struck him on the side of the head. Hambrick slumped over and pretended to be
dead; he retained consciousness. A third
shot rang out and Hambrick heard what he
presumed to be Sorrell falling.

The Demouchettes ransacked the back
room. Returning to the dining room where
Sorrell was making gurgling sounds, Demouchette told Chris, "Get the keys."
There was another shot and Sorrell's gurgling ceased. The keys were taken from
Hambrick and the Demouchettes left.
Hambrick called the police.

Sorrell died at the scene; White died
shortly thereafter. Hambrick recovered
from his wounds. The cash register had
been emptied and stereo equipment was
missing.

A jury convicted Demouchette of the capital murder of Sorrell under Texas Penal
Code § 19.03(a)(2). During the penalty
phase of his trial, Demouchette presented
expert testimony that he suffered from antisocial personality disorder, a chronic abnormality marked by impulsivity, an inability to learn from experience, and callousness towards others. Although both mental health experts called by Demouchette
testified that his acts of violence resulted
from impulse rather than plan, the jury
answered the first special issue, whether
Demouchette had killed deliberately, in the
affirmative and likewise answered the second special issue concerning future dangerousness. In accordance with the Texas
statute, the judge sentenced Demouchette
to death.[4] The Texas Court of Criminal
Appeals affirmed the conviction and sen-

---

1. 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

2. 950 F.2d 1009 (5th Cir.) (*en banc*), *cert. granted*, — U.S. —, 112 S.Ct. 2937, 119 L.Ed.2d 563 (1992).

3. *Demouchette v. State*, 731 S.W.2d 75 (Tex.Cr. App.1986), *cert. denied*, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987).

4. Under Tex.Code Crim.Proc.Ann. Art. 37.071(b) (Vernon 1981), since amended, the jury must answer special issues: (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with

the reasonable expectation that the death of the deceased or another would result; (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased. If the jury unanimously answers "yes" to each issue submitted, the court must sentence the defendant to death; otherwise the sentence is life imprisonment. The third special issue was not relevant and was not submitted.

tence.[5]

Demouchette invoked 28 U.S.C. § 2254 and sought habeas relief. The state expressly waived exhaustion of collateral state remedies. The district court conducted an evidentiary hearing at which Demouchette's trial attorney testified about mitigating evidence which he decided not to present because of the structure of the Texas death penalty statute. The district court denied relief, denied a certificate of probable cause, and vacated an earlier granted stay of execution. Demouchette timely sought CPC and a stay of execution.

### Analysis

When a district court denies a certificate of probable cause,

we lack jurisdiction to decide the appeal unless we first decide to grant one. We may issue a certificate of probable cause only when the petitioner makes a substantial showing of the denial of a federal right. To make a substantial showing, the petitioner must demonstrate that the issues are debatable among jurists of reason.[6]

The issues raised by Demouchette are no longer debatable before this court; they are foreclosed by circuit precedent.

■ Demouchette's principal argument is that the Texas death penalty statute was unconstitutional as applied to him because the jury was unable, without a special instruction, to give full mitigating effect to his evidence of antisocial personality disorder. Invoking *Penry*, Demouchette contends that his personality disorder had relevance to his moral culpability beyond his propensity to act without deliberation. He further notes that the disorder functioned only as an aggravating factor with respect to the probability of recidivism. Under these circumstances, Demouchette maintains, *Penry* requires the giving of a special instruction, which was denied in his case.

Applying *Penry*'s teachings in *Graham*, sitting *en banc* we stated:

*Penry* clearly stands for the proposition that merely because the mitigating evidence has *any* relevance to a negative answer to one of the special issues does not necessarily suffice in all cases to sustain application of the Texas statute. *Penry*'s evidence has *some* such relevance to the first issue. The more difficult question is whether the Texas statute can operate as written in any case where the mitigating evidence, though all clearly relevant to support a negative answer to one or more of the issues, nevertheless also has *any* mitigating relevance *whatever beyond* the scope of the special issues. *Penry* can fairly be read as precluding use of the Texas statutory scheme in any such situation. But, *Penry* can *also* fairly be read as addressing only a situation where some major mitigating thrust of the evidence is substantially beyond the scope of any of the issues. That, indeed, was the case in *Penry*, where as to the third issue the mitigating evidence was all essentially irrelevant, as to the second issue it was *only* affirmatively harmful to the defense, and as to the first issue its favorable relevance was essentially minor but its "major thrust" was beyond the scope of the issue.[7]

In *Graham* we adopted the latter reading of *Penry*, holding that a special instruction was required only if a "major mitigating thrust"[8] of the evidence was substantially beyond the scope of all the special issues.

Here, the jury was able to give mitigating effect to Demouchette's personality disorder evidence in deciding whether he acted deliberately. A "major thrust" of his expert testimony was that an antisocial personality acts on impulse rather than deliberation. Although a reasonable juror might have found that this evidence had

5. *Demouchette v. State, supra.*

6. *Cordova v. Collins,* 953 F.2d 167, 169 (5th Cir.) (internal quotations and citations omitted), *cert. denied,* — U.S. ——, 112 S.Ct. 959, 117 L.Ed.2d 125 (1992).

7. 950 F.2d at 1026–27 (emphasis in original).

8. *Id.,* 950 F.2d at 1027.

independent mitigating value in reducing moral culpability, we cannot say with assurance that a major mitigating thrust of the evidence was substantially beyond the reach of the deliberateness issue. Accordingly, Demouchette's argument that he was entitled to a special jury instruction is foreclosed by *Graham.*

■ Demouchette further contends that the operation of the Texas death penalty scheme so hampered his trial attorneys in developing a mitigation defense as to deprive him of effective assistance of counsel. To the extent this is a claim of constructive denial of sixth amendment rights, we rejected this argument in *May v. Collins,*[9] explaining that a rule allowing such ineffective assistance claims would be impossible to cabin because tactical decisions concerning the type of evidence to present in sentencing proceedings "are always channelled by the requirements of the statute under which the state proceeds."[10] To the extent the argument would fault trial counsel's decision to forego developing mitigating evidence that might also be hurtful, it offers no more than the eighth amendment contention which likewise is foreclosed.

For these reasons, the application for a certificate of probable cause and the motion for stay of execution are DENIED.

---

**9.** 948 F.2d 162 (5th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 907, 116 L.Ed.2d 808 (1992).

**10.** *May,* 948 F.2d at 167; *see also Black v. Collins,* 962 F.2d 394, 407 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2983, 119 L.Ed.2d 600 (1992).