11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Geraldmara Jermaine
Williams

Appellant

Vs.                   No.  11-02-00032-CR C Appeal from Harris County

State of Texas

Appellee

 

The jury
convicted appellant of capital murder, and the trial court assessed his
punishment at confinement for life.  We
affirm.  

In his
sole issue on appeal, appellant argues that the trial court erred in denying
his motion for a directed verdict because there was no evidence that appellant
committed the underlying offense of robbery. 
We treat an issue complaining about a trial court's failure to grant a
motion for directed verdict as a challenge to the legal sufficiency of the
evidence.  Williams v. State, 937 S.W.2d
479 (Tex.Cr.App.1996);  Cook v. State,
858 S.W.2d 467, 470 (Tex.Cr.App.1993). In order to determine if the evidence is
legally sufficient, we must review all of the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979);
Jackson v. State, 17 S.W.3d 664 (Tex.Cr.App.2000). 








Shabir
Brohi, the victim=s brother,
testified at trial that he and his brother lived together at  the Rubicon Apartments. Chronda Henderson,
who lived at the same apartment complex, testified that, on February 11, 1999,
sometime between 7:30 and 8:00 a.m., she was taking her children to school and
day care.  Henderson stated that there
was a man sitting on a green utility box and that he asked her who drove the
black Mercedes located in the parking lot of the complex.  Henderson directed the man to the apartment
where the owner of the black Mercedes lived. 
Henderson identified appellant as the person seeking the owner of the
black Mercedes.   Another resident of
the apartment complex also testified that a man approached her on the morning
of February 11 and asked where the owner of the black Mercedes lived.   That resident told the man she did not know
where the owner lived.  Brohi testified
at trial that he owned a black Mercedes. 

Brohi
testified that, on February 11, he woke up around 8:00 a.m. when he heard a
noise.  Brohi thought that someone from
the maintenance department was there to work on the apartment.  Brohi got up and went into the bathroom
which adjoined his bedroom.  Brohi then
heard a knock on his bedroom door. 
Brohi said that the victim never knocked on his bedroom door, so he was
suspicious and asked the victim Awhat happened.@  The victim said to Brohi in their native
language, ABrother, black man.@ 
Brohi went to the door; and the victim told Brohi, ABrother, be careful.@ Brohi opened the door and saw appellant
holding a gun to the victim=s neck. 

Brohi
stated that appellant then pushed the victim toward the victim=s bedroom and that Brohi then heard a
shot.   Brohi went into his bedroom and
got his gun.  He heard two more shots.
Appellant then pointed his gun at Brohi, but the gun did not fire.  Appellant ran into the bathroom and shut the
door.  Brohi shot through the door.  Brohi did not know if the shots he fired
struck appellant.  Brohi then called the
police, and appellant ran out of the apartment. 

Keith
Pikett, with the Fort Bend County Sheriff=s Department, testified that he responded to the scene with his K-9
partner.  Officer Pikett stated that the
bloodhound followed appellant=s scent to a nearby apartment complex. 
Appellant was later found in a car in the parking lot of that apartment
complex.  Appellant had a bandage around
his arm.   A female who was with
appellant gave consent to search the apartment she shared with appellant.  In appellant=s bedroom, the police recovered blue jeans which had apparent bloodstains
on them, a flannel shirt with blood on it, and a pair of shoes with blood drops
on them.  A bloody palm print found by
the door of the Brohis=
apartment matched appellant=s palm print.   Blood samples
recovered from the Brohis= bathroom matched that of appellant. 

Appellant
contends that there is no evidence to support the underlying offense of
robbery.  A person commits the offense
of robbery if, Ain the course of committing theft,@ he:

(1) intentionally, knowingly, or recklessly
causes bodily injury to another; or 

(2) intentionally or knowingly threatens or
places another in fear of imminent bodily injury or death.

 








TEX. PENAL CODE ANN. ' 29.02 (Vernon 1994).  Proof of a completed theft is not required
to establish a robbery.  Wolfe v. State,
917 S.W.2d 270 (Tex.Cr.App.1996); 
Demouchette v. State, 731 S.W.2d 75, 78 (Tex.Cr.App.1986), cert. den=d,  482 U.S. 920 (1987).  While an intent to steal must be shown in
order to prove an attempted theft, this intent may be inferred from
circumstantial evidence. McGee v. State, 774 S.W.2d 229, 235 (Tex.Cr.App.1989),
cert. den=d,  494
U.S. 1060 (1990).  

The record
shows that appellant inquired about the owner of a black Mercedes on the
morning of the murder.  Appellant was
shown the apartment where the owner, Brohi, lived.  Brohi was awakened by a noise in the apartment, and then
appellant was at his bedroom door holding a gun to the victim=s neck. 
Brohi testified that he kept the keys to his Mercedes in his
bedroom.  After reviewing all of the
evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found that appellant committed murder while in
the course of committing or attempting to commit the offense of robbery.  Appellant=s sole issue on appeal is overruled.

The
judgment of the trial court is affirmed.

 

TERRY
McCALL

JUSTICE

 

December 12, 2002 

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.