NO. 07-03-0274-CR


 07-03-0275-CR

 07-03-0276-CR

 07-03-0277-CR


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



AUGUST 7, 2003


______________________________




JOE D. HENDERSON, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE



_________________________________



FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;



NO. 45,363-A; 45,823-A; 45,824-A; 45,825-A; HONORABLE HAL MINER, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

ON ABATEMENT AND REMAND


 Appellant Joe D. Henderson has given pro se notice of appeal from convictions in
causes numbers 45,363-A, 45,823-A, 45,824-A and 45,825-A in the District Court of Potter
County, Texas (the trial court). The clerk of the court of appeals has received motions from
the trial court clerk and the court reporter requesting extensions of time for the filing of the
respective appellate records. Both motions reflect that no designation of record has been
received and no arrangement to pay for the records has been made. No appearance has
been made by any counsel for appellant on appeal. 

 In Texas, every person convicted of a crime has a statutory right to appeal. See
Tex. Crim. Proc. Code Ann. § 44.02 (Vernon 1979); Nguyen v. State, 11 S.W.3d 376,
378-79 (Tex.App.--Houston [14th Dist.] 2000, no pet.); Johnson v. State, 885 S.W.2d 641,
644 (Tex.App.--Waco 1994, pet. ref'd). The Sixth and Fourteenth Amendments of the
United States Constitution guarantee to a criminal defendant the right to counsel on a first
appeal. See Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). An
attorney must be appointed by the state to represent an indigent defendant on the first
appeal. See McCoy v. Court of Appeals of Wisconsin, Dist. 1, 486 U.S. 429, 435, 108
S.Ct. 1895, 1900, 100 L.Ed.2d 440 (1988). In Texas, the trial court has been designated
to appoint the appellate attorney for an eligible indigent defendant. See Tex. Crim. Proc.
Code Ann. §§ 1.051(d)(1), 26.04(a). 

 These appeals are abated and the causes are remanded to the trial court. Upon
remand, the judge of the trial court is directed to cause notice to be given of and to conduct
a hearing to determine: (1) whether appellant desires to prosecute any or all of the
appeals; (2) if appellant desires to prosecute any or all of the appeals, then whether
appellant is indigent; (3) if appellant is indigent and desires to prosecute any or all of the
appeals, whether counsel should be appointed for appeal; and (4) what orders, if any,
should be entered to assure the filing of appropriate notices and documentation to dismiss
appellant's appeals if appellant does not desire to prosecute any of the appeals, or, if
appellant desires to prosecute any of the appeals, to assure that the appeals will be
diligently pursued. If the trial court determines that counsel should be appointed for any
or all of the appeals, the trial court should cause the clerk of this court to be furnished the
name, address, and State Bar of Texas identification number of the appointed attorney. 

 The trial court is directed to: (1) conduct any necessary hearings; (2) make and file
appropriate findings of fact, conclusions of law and recommendations, and cause them to
be included in a supplemental clerk's record; (3) cause the hearing proceedings to be
transcribed and included in a reporter's record of the hearing; and (4) have a record of the
proceedings made to the extent any of the proceedings are not included in the
supplemental clerk's record or the reporter's record of the hearing. In the absence of a
request for extension of time from the trial court, the supplemental clerk's record, reporter's
record of the hearing, and any additional proceeding records, including any orders, findings
conclusions and recommendations, are to be sent so as to be received by the clerk of this
court not later than August 29, 2003. 

 Per Curiam


Do not publish.





ity="59" SemiHidden="false"
 UnhideWhenUsed="false" Name="Table Grid"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-0038-CR

 

IN THE COURT OF
APPEALS

 

FOR THE SEVENTH
DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL D

 

APRIL 23, 2010

______________________________

 

PAUL D. TIMMS, 

 

                                                                                                            Appellant

 

v.

 

THE STATE OF TEXAS, 

 

                                                                                                            Appellee

_________________________________

 

FROM THE 364TH
DISTRICT COURT OF LUBBOCK COUNTY;

 

NO. 2007-417,789;
HON. BRAD UNDERWOOD, PRESIDING

_______________________________

 

Memorandum Opinion

_______________________________

 

Before QUINN, C.J., and
CAMPBELL and PIRTLE, JJ.

            Paul D. Timms was convicted of aggravated robbery under
the law of parties and sentenced to life imprisonment.  He challenges the conviction by contending,
through six issues, that 1) the evidence was legally and factually insufficient
to show that a theft was committed, 2) the evidence was legally and factually
insufficient to show that the theft committed was a felony, and 3) he was
denied the right to compulsory process when the trial court refused to compel a
co-conspirator to testify.  We affirm the
judgment. 

            Background

            Appellant
and his wife Tammy used and sold methamphetamine.  One of their sources for the drug was Tommy
Yugovich.  Apparently, Yugovich supplied
narcotics to others as well, and it was through one of these third party
transactions that he received a counterfeit $20 bill.  The bill eventually came into the possession of
appellant who attempted to negotiate it. 
This resulted in his arrest. 
Believing that Yugovich helped create the predicament, appellant sought
to have Yugovich pay half of the attorneys fees he would incur in defending
himself.  Yugovich refused.  That refusal, however, did not assuage
appellants desire to foist some of the economic burden onto Yugovich.  

            While in
jail, appellant engaged in phone conversations with various people, including
his wife Tammy and Donnie Green.  From
these conversations arose a plan through which funds or drugs would be
extracted from Yugovich.  Those participating
in the effort would be Green, Tammy, and Jerry Don Castle (Castle), and it unfolded
on March 25, 2007.  

            Yugovich
arranged to meet Tammy at Castles home to sell her drugs.  Before doing so, he stopped to buy the narcotics
that he intended to sell.  Then, he
proceeded to the house with his girlfriend, Michelle Pierce (Michelle).  When the two arrived, Castle phoned Tammy,
who appeared shortly thereafter.  Upon
entering the house, Tammy sat next to Yugovich while Castle invited Michelle
into an adjoining room to play pool.  After
Castle and Michelle exited, Tammy excused herself and went to the
bathroom.  Yugovich was alone weighing or
dividing the drugs he intended to sell when Green broke through a door with a
metal t-post in hand.  The t-post was
used to strike Yugovich twice in the head. 
As he was being assaulted, Yugovich cried out.  In response, Michelle returned to the room
wherein Yugovich was located.  Seeing
what was happening, she attempted to hit Green with a pool cue.  Yet, that did not stop him for he brought the
t-post down upon her head.  As Yugovich
and Michelle were now on the floor, Green began asking where is it, where is
the shit?  Michelle replied, you have
it already after noticing that he held the bag containing the drugs.  Green then saw money on the floor, stooped,
picked the sum up, and left.  Once Green had
gone, Tammy exited the bathroom and also left. 
Apparently, she did so in a hurry since she forgot to take her
pocketbook.

            Whether Green actually arrived at Castles house with
Tammy is unknown, as is whether she left with him.  Nonetheless, the two were seen together earlier
that evening.  So too did they phone each
other within minutes after the assault and engage in a joint telephone
conversation with appellant the next day. 
During this latter conversation, they referred to the home invasion (i.e. the label ascribed by the media to the
incident), and appellant could be heard telling Tammy that she . . . had no
reason, nothing to do with that now.  All
right.  Then, appellant uttered [a]ll
right.  So thats taken care of to which
Tammy says, [a]s far as I know.  Green
too can be heard reassuring appellant about it being taken care of.  When Green eventually mentioned that [t]hey
got a pretty good description of that guy on the news, appellant cautioned
that they just need to chill out now.          

            The
beating resulted in Yugovich suffering a skull fracture and permanent brain damage.  Michelles injuries were severe but less
so.  She needed only fourteen stitches to
close the wound on her head.

            Appellant
was tried by a jury.  It returned a
verdict of guilty upon the charge of aggravated robbery.  The trial court accepted the verdict and
sentenced him to life.    

            Issues
2 & 4 - Evidence of Responsibility 

            We
initially address appellants issues two and four.  Therein, he challenges the legal and factual
sufficiency of the evidence to support his conviction as a party and to show
that the value of the property taken by Green equaled or exceeded the value
needed for the theft to be a felony.  We
overrule the issues.

            The applicable
standards of review are found in Jackson v. Virginia, 443 U.S. 307, 99
S.Ct. 2781, 61 L.Ed.2d 560 (1979) and Watson v. State, 204 S.W.3d 404
(Tex. Crim. App. 2006).  We refer the
parties to those cases and their progeny.  


            There
are several ways in which one may be held criminally
responsible for an offense of another.  Two
such ways are either 1) by soliciting, encouraging, directing, aiding, or
attempting to aid the other person to commit the offense while acting with
intent to promote or assist the commission of the offense or 2) by a
co-conspirator committing a separate felony offense in furtherance of the
unlawful purpose of the conspiracy which separate offense should have been
anticipated as a result of the carrying out of the conspiracy.  Tex. Penal
Code Ann. §7.02(a)(2) & (b) (Vernon 2003).  Each mode was included in the jury charge
here.  And to prove those elements, the
State not only tendered the evidence we mentioned under Background but also various
recordings of telephone conversations. 
The latter were between appellant, Tammy, and Green and involved 1)
appellant saying thats all he needed to hear in response to Tammy disclosing
that Yugovich would not help pay for appellants attorney, 2) appellant telling
Tammy that he wanted to speak with Green, 3) appellant informing Tammy that he
was going [to] send [Green] in after Tammy stole the dope from Yugovich, 4)
Tammy saying [a]ll right . . . send him over there, 5) Green uttering that
the deal with old boy, that its a done deal, 6) appellant asking Green
[w]hat are you going to come up with and Green answered, [e]very bit of it .
. . . Im taking all of it, 7) appellant telling Green to let the old boy
believe that Tammy has got the cash money to tell him shes got $800 or
whatever, plus whatever she owes him . . ., 8) Green replying [a]ll right .
. . . we can do it that way then, 9) appellant directing Green to let me talk
to Tammy again so I can make her understand that, 10) appellant commenting
that he did not want the episode to occur at his house, and 11) appellant recommending
that it . . . be done at [Castles] house instead since Castle had been
wanting to do the same thing to Tommy as what [appellant] wants to have
done.  This totality of evidence enabled
one to rationally conclude beyond reasonable doubt that appellant was a party
because he planned the entire event, drugs were to be taken from Yugovich as
part of the plan, and the planned events actually transpired.  That the participants used indefinite phrases
such as old boy or that appellant was never heard expressly directing anyone
to hit or rob Yugovich matters little. 
Guilt can be founded upon circumstantial evidence and rational
deductions from such evidence.  Gardner v. State, No. AP-75,582, 2009
Tex. Crim. App. Lexis 1441 at *12
(Tex. Crim. App. October 21, 2009).  More
importantly, a jurys verdict is not rendered factually deficient or manifestly
unjust simply because it may be founded upon circumstantial evidence and
deductions therefrom.    

            Nor
does it matter that the State purportedly neglected to prove the value of the
property taken.  Indeed, authority
dictates that it need not prove a completed theft when attempting to prove
robbery.  Demouchette v. State, 731 S.W.2d 75, 78 (Tex. Crim. App. 1986); accord Wooden v. State, 101 S.W.3d 542,
546 (Tex. App.--Fort Worth 2003, pet. refd) (stating that robbery can be
established without proof that property was actually stolen).  All that is necessary is to show a theft was
attempted.  Wooden v. State, 101 S.W.3d at 546. This, in turn, means that it did not matter whether the drugs
taken by Green had a value equal to or exceeding that needed for the theft to
be deemed a felony.  In other words, if
there was no need to establish that anything was taken, then there was no need
to show that the items not taken had a particular value.

            So,
none of the contentions underlying the two issues we address have merit.  Consequently, we again say that the verdict
enjoys the support of both legally and factually sufficient evidence. 

             Issues 1 & 3  Evidence of Theft

            In
his first and third issues, appellant attacks the legal and factual sufficiency
of the evidence to show that a theft occurred. 
We overrule the issues.

             According to appellant, the prosecution failed
to establish that the property taken by Green belonged to either Michelle or
Yugovich or that the money Green retrieved from the floor exceeded the value of
the drugs.  Yet, as indicated above,
there was no need to prove that an actual, completed theft occurred.  Thus, who owned the drugs that were taken
(which the evidence rather clearly showed were Yugovichs) and whether their
value exceeded the sum of money Tammy brought is immaterial. 

            Issue Five 
 Compel Testimony

            Next,
appellant argues that the trial court erred in refusing to compel Green to
testify, and in so refusing, it also denied him his right to compulsory
process.  We overrule the issue.

            No one
questions the fact that Green committed acts for which he could be criminally
prosecuted.  Furthermore, the record
establishes that he invoked his Fifth Amendment right insulating him from self-incrimination
per the advice of his legal counsel. 
Since that particular right trumps a defendants Sixth Amendment right
to compulsory process, Bridge v. State,
726 S.W.2d 558, 567 (Tex. Crim. App. 1986); Boler
v. State, 177 S.W.3d 366, 370-71 (Tex. App.Houston [1st Dist.] 2005, pet. refd),
and a trial court need not make any inquiry into the validity of ones reliance
upon the Fifth Amendment when invoked per the advice of counsel, Boler v. State, 177 S.W.3d at 371, the
trial court at bar did not err as suggested by appellant.      

            

 

Issue Six 
Improper Charge

            Via his
last issue, appellant contends that the verdict was legally and factually
insufficient because the charge allowed the jury to convict on an invalid
basis.  This contention implicates the
methods by which one can be held liable for the crimes of another.  The supposed invalidity at issue concerned
the second method discussed in issues two and four above, i.e. liability for the acts of a co-conspirator.  According to appellant, the trial court was
prohibited from submitting that method since the evidence failed to show that
the value of property stolen equaled or exceeded that needed for the crime to
be a felony.  We overrule the issue.

            As
previously discussed, one can prove robbery without establishing that a
completed theft occurred.  Demouchette v. State, supra.  So, the State was not obligated to prove the
value of the object stolen.  This, in
turn, meant that the jury could legitimately find that Green committed robbery even
if no one illustrated how much the drugs were worth.  So, we have no choice but to reject this
means of attacking the legal and factual sufficiency of the evidence.     

            Having overruled each issue, we
affirm the judgment.

 

 

 

                                                                                    Brian
Quinn 

                                                                                    Chief
Justice

 

Do not publish.