

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00145-CR

Emilio J. **MALDONADO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR2068
Honorable Melisa Skinner, Judge Presiding

Opinion by: Luz Elena D. Chapa, Justice

Sitting: Karen Angelini, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: May 29, 2013

AFFIRMED

Emilio J. Maldonado was convicted by a jury of aggravated robbery. On appeal, Maldonado challenges the sufficiency of the evidence to support the jury's findings that he was committing or attempting to commit theft and that he used or exhibited a deadly weapon. We affirm the trial court's judgment.

### TRIAL EVIDENCE

Real estate agent J. Tisdale testified that in late November 2010, she showed some homes to Emilio Maldonado. The neighborhood Maldonado was interested in was relatively new and

isolated, with large homes on one to five acre lots. The homes ranged in price from $600,000 to $3 million. Tisdale showed Maldonado two houses in the neighborhood. A few days later Maldonado called her and told her he wanted to make an offer on one of the houses. Maldonado signed a contract, but did not provide the cash down payment or show proof of funds as required because the house was in foreclosure.

Tisdale did not hear from Maldonado again until one month later. He called Tisdale, saying he wanted to see the house again and planned to bring his banker. They agreed to meet on December 23 at the house in which he originally showed interest. When she arrived at the house, Maldonado's Mercedes was parked in the driveway. His banker was not present.

Tisdale testified the house had a combination lockbox. She opened the lockbox, took out the house key, and placed the lockbox on the ground next to the front door. After opening the door, she left the key in the door, and they went inside. They walked through the house and discussed some details, and then Tisdale allowed Maldonado to walk through the house alone. She recalled that while they were walking through the house, Maldonado asked her when her bank closed. She thought the question was odd and responded that he could obtain a cashier's check the following day. Tisdale testified Maldonado went into the master bedroom and stayed an unusually long time while she waited in the kitchen. After they had been in the house for over an hour, she began to feel uncomfortable and nervous. Finally, she called to Maldonado, telling him, untruthfully, that she had another appointment and needed to leave.

Tisdale walked Maldonado to the front door and allowed him to walk out first. The front porch of the house is a deep alcove, only several feet wider than the front door. The walls on each side of the alcove are made of stone and there are seven steps down to the sidewalk and driveway. When Tisdale exited the house, she thought Maldonado had gone down the stairs. She turned around, closed the door, and bent down to pick the lockbox up off the ground. As she

was bending down, she was struck hard on the back of the head. The blow caused her to fall forward and hit her forehead on the stone wall.

Tisdale testified her head hurt and was bleeding profusely. However, she was angry and she jumped up immediately and asked Maldonado why he had struck her. Tisdale testified Maldonado appeared surprised she was able to stand, but he immediately demanded, "I need $4,000. I need it right now." Tisdale told Maldonado she did not have any money. She testified Maldonado was holding a stick or pole. The stick was about fourteen inches long and had metal on one end. She testified it looked to her like a stick used to help pull down an attic staircase.

Maldonado cornered Tisdale against the door and stone wall of the confined porch. She was unable to leave. She testified Maldonado continued to demand $4,000, insisting he had to have it. He said he did not know what he was going to do with her, and Tisdale testified she was afraid he intended to kill her. When someone drove by in a golf cart, Maldonado raised the "pole" and told her "to shut [her] . . . mouth" or he would hit her again. Tisdale testified she tried to keep him talking and she volunteered to write a note stating he had not hit her. Throughout the forty-five minutes Maldonado kept her on the porch, he continued demanding $4,000 from her.

Eventually, Maldonado walked down the steps to his car to get some paper. Tisdale took the opportunity to run. She crossed the street, but Maldonado caught her and began to drag her back. Tisdale saw a car full of teenagers approaching and she screamed. The car stopped and Tisdale got into their car and they drove away. They took her to a nearby high school where they had seen a police officer a few minutes earlier.

San Antonio Police Department patrol officer Jack Neal was sitting in his patrol car writing a report when the teens and Tisdale pulled up. As Tisdale recounted the details to the officer, she saw Maldonado driving past in his Mercedes. Officer Neal followed the car and

pulled it over. When Officer Neal looked into the car, he saw a "large club or a stick" in the front passenger seat. Officer Neal frisked Maldonado and found a large folding knife wrapped in two gloves in one of his pockets.

The "stick" found in Maldonado's car was introduced into evidence. Tisdale identified it as the weapon Maldonado used and testified he hit her in the head with the metal end. Officer Neal testified he is trained in the use of batons or clubs and testified that use of a police baton on someone's head is considered use of deadly force. Officer Neal described the weapon Maldonado used as "some type of club" made of solid wood with metal on one end. Officer Neal handled the weapon while he was on the stand and testified it had some weight to it. He concluded that based on his training and experience, the weapon was capable of causing serious bodily injury or death if used to strike a person in the head.

Emergency medical personnel treated Tisdale at the scene and told her to go to the hospital. At the hospital, staples were used to close the wound in the back of Tisdale's head. She testified she has a scar on the back of her head and still has a knot on her forehead where it hit the wall. Maldonado did not testify.

## STANDARD OF REVIEW

We review the evidence for legal sufficiency by looking at "all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). It is the jury's "duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Clayton*, 235 S.W.3d at 778. We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial

evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We determine "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012). "When the record supports conflicting inferences, a reviewing court must presume that the fact finder resolved the conflicts in favor of the prosecution and defer to that determination." *Id.*

## ATTEMPT TO COMMIT THEFT

The offense of robbery as charged in this case is committed when, in the course of committing theft and with the intent to obtain or maintain control of the property, a person intentionally or knowingly causes bodily injury to another. TEX. PENAL CODE ANN. § 29.02(a)(1) (West 2011). "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2012).

Maldonado does not challenge the sufficiency of the evidence that he intentionally caused bodily injury to Tisdale. Rather, he contends there is no evidence he had the intent to obtain or maintain control of property or that he attempted to commit theft. Maldonado asserts the evidence supports only a finding that his striking Tisdale was an impulsive act unrelated to any attempt to acquire money. We disagree.

Robbery is a form of assault. *Ex parte Hawkins*, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999). No completed theft is required in order for the conduct to constitute the offense of robbery. *Demouchette v. State*, 731 S.W.2d 75, 78 (Tex. Crim. App. 1986); *White v. State*, 671 S.W.2d 40, 41 (Tex. Crim. App. 1984). While an intent to steal must be shown in order to prove

an attempted theft, this intent may be inferred from circumstantial evidence. *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996). As a general rule, "a theft occurring immediately after an assault will support an inference that the assault was intended to facilitate the theft." *Cooper v. State*, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002). And when an assault is coupled with a demand for money, a jury may reasonably conclude the assault occurred in an attempt to commit theft. *See Crawford v. State*, 889 S.W.2d 582, 584 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (holding evidence sufficient to prove robbery where defendant demanded a quarter and hit complainant with a large metal crucifix when she said she had no money).

Maldonado had on him a large knife wrapped in gloves and a fourteen inch wood and metal stick or club. He demanded money from Tisdale immediately after using the stick to strike her on the head from behind. A reasonable jury could have inferred that Maldonado's intent, before, during, and/or after he hit Tisdale, was to deprive her of her money. A reasonable jury also could have concluded that Maldonado's demand for $4,000 was an attempt to obtain money from Tisdale against her wishes, and was not merely an innocent expression of his need for money. Viewing the evidence in the light most favorable to the verdict, we hold a rational jury could have found Maldonado committed robbery by assaulting Tisdale in an attempt to steal money. It is of no moment that Tisdale did not have any money with her or that Maldonado may have later changed his intent. We overrule Maldonado's first point of error.

### DEADLY WEAPON

The offense of robbery is aggravated if the person uses or exhibits a deadly weapon. TEXAS PENAL CODE ANN. 29.03(a)(2) (West 2011). In his second point of error, Maldonado argues the evidence is insufficient to support the jury's finding that he used or exhibited a deadly weapon. We again disagree.

A "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2012). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). To support the finding that the "stick" was a deadly weapon, the evidence must show only that Maldonado used or intended to use it in a manner that had the potential to cause death or serious bodily injury. *See Hill v. State*, 913 S.W.2d 581, 582 (Tex. Crim. App. 1996). In deciding whether something is a deadly weapon, the jury may consider all of the facts, including its size and shape, the physical proximity between the victim and the object, the manner in which the object was used, the severity of the wounds inflicted, and testimony about the weapon's potential for deadliness. *See Brown v. State*, 716 S.W.2d 939, 946-47 (Tex. Crim. App. 1986) No one factor is dispositive. It is not necessary that the use of the weapon actually caused serious bodily injury for the jury to properly find it to be a deadly weapon. *See Fugett v. State*, 855 S.W.2d 227, 229 (Tex. App.—Fort Worth 1993, no pet.).

Here, the weapon Maldonado used was about fourteen inches long, was made of solid wood, and had a strip of metal secured around one end. Maldonado used the weapon by swinging the metal end down upon the back of Tisdale's head from behind as she bent down to pick up something. After examining and handling the weapon, Officer Neal testified that, like a police baton, this weapon was capable of causing serious bodily injury or death when used to strike someone in the head. The weapon was introduced into evidence and the jury was able to examine it. We hold a rational jury could have determined from this evidence that the weapon was capable of causing serious bodily injury when used to strike someone in the head and was therefore a deadly weapon. We therefore overrule Maldonado's second point of error.

**CONCLUSION**

We hold the evidence was sufficient to support the jury's verdict that Maldonado committed aggravated robbery. Accordingly, we affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH